UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.                                                        Case No. _24-cr-17-jdp_____

BRAZOS URETHANE, INC.,

Defendant.

## DEFERRED PROSECUTION AGREEMENT

Defendant Brazos Urethane, Inc. (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, and the United States Attorney's Office for the Western District of Wisconsin (the "Office") enter into this deferred prosecution agreement (the "Agreement").

### Criminal Information and Acceptance of Responsibility

1.       The Company acknowledges and agrees that the Office will file the attached one-count criminal information in the United States District Court for the Western District of Wisconsin charging the Company with one count of conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371.  In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal

1

Procedure 48(b); and (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A and consents to the filing of the information, as provided under the terms of this Agreement, in the United States District Court for the Western District of Wisconsin. The Office agrees to defer prosecution of the Company pursuant to the terms and conditions described below.

2.     The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its current and former officers, directors, employees, and agents as charged in the information, and as set forth in the attached Statement of Facts, and that the allegations described in the information and the facts described in the attached Statement of Facts (Attachment A) are true and accurate. Should the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the attached Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

**Term of the Agreement**

3.     This Agreement is effective for a period beginning on the date on which the information is filed and ending three years from that date (the "Term"). The Company agrees, however, that, in the event the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement

2

or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Office, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in paragraphs 18-22 below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period. Conversely, in the event the Office finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early. If the Court rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and the Term shall be deemed to have not begun.

## Relevant Considerations

4.     The Office enters into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

a.     the Company did not receive voluntary disclosure credit because it did not voluntarily and timely disclose to the Office the conduct described in the Statement of Facts attached hereto as Attachment A (Statement of Facts). However, after learning of the allegations of misconduct by Company officials, the Company retained a contractor to clean up the dump site at 857 Elk Avenue and 863 Elk Avenue

3

in Oxford, Wisconsin and spent approximately $480,000 to remediate this site. Also, after being contacted by the Office, the President of the Company indicated an intent to cooperate in the criminal investigation, and met with law enforcement agents for two separate debriefings;

      b.     the Company received full credit for its cooperation with the Office's investigation;

      c.     through two separate debriefings, the Company provided to the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Office prior to the Agreement;

      d.     the Company has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

      e.     based on the Company's remediation and the state of its compliance program, and the Company's agreement to report to the Office as set forth in Attachment D to this Agreement (Corporate Compliance Reporting), the Office determined that an independent compliance monitor was unnecessary.

      f.     the Company has no prior criminal history; and

g.     the Company has agreed to continue to cooperate with the Office in any ongoing investigation of the conduct of the Company, its subsidiaries and affiliates, or any of its present or former officers, directors, employees, agents, business partners, distributors, and consultants relating to violation of federal criminal laws.

### Future Cooperation and Disclosure Requirements

5.     The Company shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Office until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the term specified in paragraph 3.  At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company, its subsidiaries or its affiliates, or any of its present or former officers, directors, employees, agents, business partner, distributors, consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts.  The Company's cooperation pursuant to this paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Office a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing the validity

of any such an assertion.  The Company agrees that its cooperation pursuant to this

paragraph shall include, but not be limited to, the following:

      a.     The Company shall truthfully disclose all factual information with

respect to its activities, those of its subsidiaries and affiliates, and those of its present

and former directors, officers, employees, agents, and consultants, including any

evidence or allegations and internal or external investigations, about which the

Company has any knowledge or about which the Office may inquire relating to the

conduct described in this Agreement and the attached Statement of Facts.  This

obligation of truthful disclosure includes, but is not limited to, the obligation of the

Company to provide to the Office, upon request, any document, record or other

tangible evidence about which the Office may inquire of the Company.

      b.     Upon request of the Office, the Company shall designate

knowledgeable employees, agents or attorneys to provide to the Office the information

and materials described in paragraph 5(a) above on behalf of the Company.  It is further

understood that the Company must at all times provide complete, truthful, and

accurate information.

      c.     The Company shall use its best efforts to make available for

interviews or testimony, as requested by the Office, present or former officers, directors,

employees, agents and consultants of the Company.  This obligation includes, but is not

limited to, sworn testimony before a federal grand jury or in federal trials, as well as

interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

        d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures to other governmental authorities, including United States authorities and those of a foreign government of such materials as the Office, in their sole discretion, shall deem appropriate.

      6.      In addition to the obligations in paragraph 5, during the Term, should the Company learn of any evidence or allegation of a violation of fraud and/or federal environmental laws, the Company shall promptly report such evidence or allegation to the Office.

**Payment of Monetary Penalty**

      7.      The Office and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

a.  The 2021 USSG are applicable to this matter.

b.  The fraud loss amount is $850,000 which represents the gain to the Company based on the improper disposal of the hazardous waste materials. The federal contract with the Company paid it $1,000,000 for proper disposal of the hazardous waste. Based on the waste manifests, the Company spent $150,000 to send hazardous waste to a proper landfill facility. The rest was illegally dumped. The result was a gain to the Company of $850,000 ($1,000,000 - $150,000 = $850,000).

c.  <u>Offense Level</u>.  Based upon USSG § 2B1.1, the total offense level is 20, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 6 |
| (b)(1)(L) | Loss more than $550,000 | +14 |
| | Acceptance of responsibility | -3 |
| | **TOTAL** | 17 |

d.  <u>Base Fine</u>.  Based upon USSG § 8C2.4(a)(1), the base fine is $450,000 (the fine indicated in the Offense Level Fine Table)

e.  <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 4, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(5) | the organization had 10 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +1 |
| (g)(1) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | - 2 |
| | **TOTAL** | 4 |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $450,000 |
| Multipliers | .8 (min) / 1.6 (max) |
| Fine Range | $360,000 to $720,000 |

8.     The Company and the Office agrees, pursuant to Title 18, United States Code, Section 3663A, there is no restitution amount in this case because the Company already paid approximately $480,000 to remediate the dump site.

9.     The Company agrees to pay a monetary penalty of $300,000 as part of this deferred prosecution agreement. This amount represents the amount of money the Company attempted to save (after payment of the remediation costs) by committing fraud and not using the contract funds to properly dispose of the hazardous waste materials as forth in the contract.

10.     The Company agrees to pay this monetary penalty in full at the time this Agreement is filed with the Court.  The check shall be made payable to the U.S. Clerk of Court for the Western District of Wisconsin for deposit into the Court's fine fund.

11.     The Office agrees that this disposition is appropriate given the facts and circumstances of this case, including the relevant considerations outlined above. Nothing in this Agreement, however, shall be deemed an agreement by the Office that the $300,000 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court

should impose any type of monetary penalty, including a fine or forfeiture, and the amount of such fine or forfeiture.

## Conditional Release from Liability

12.     Subject to paragraphs 18-22, the Office agrees, except as provided in this Agreement, that it will not bring any criminal or civil case against the Company relating to any of the conduct described in the attached Statement of Facts or the criminal information filed pursuant to this Agreement.  The Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Company:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 18 of the United States Code.  This Agreement does not provide any protection against prosecution for any future conduct by the Company.

## Corporate Compliance Program

13.     The Company represents that it will implement a compliance and ethics program designed to prevent and detect violations of fraud and/or federal environmental laws throughout its operations, including those of its subsidiaries, affiliates, employees, agents, and joint ventures, including, but not limited to, the minimum elements set forth in Attachment C.

14.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it will undertake in the future, in

a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with fraud and environmental law reporting, or books and records provisions of the federal laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous compliance program that is designed to effectively detect and deter violations of  fraud and/or violations of federal environmental laws throughout its operations.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

15.     The Company agrees that it will report to the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

### Deferred Prosecution

16.     In consideration of the undertakings agreed to by the Company herein, the Office agrees that any prosecution of the Company for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that is not set forth in the attached Statement of

Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

17.     The Office further agrees that if the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company described in paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Office shall seek dismissal with prejudice of the criminal information filed against the Company described in paragraph 1, and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts.

## Breach of the Agreement

18.     If, during the Term, the Company: (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in paragraphs 13 and 14 of this Agreement and Attachment C; or (e) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the

charges in the information described in paragraph 1, which may be pursued by the Office in the U.S. District Court for the Western District of Wisconsin or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

19.    In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such

breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company.

20.     In the event that the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office, or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the

Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

21.     The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

22.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the President, will certify to the Office that the Company has met its disclosure obligations pursuant to paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

## Sale, Merger, or Other Change in Corporate Form of Company

23.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it wishes to undertake any change in corporate form, (including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct

described in the attached Statement of Facts), as they exist as of the date of this Agreement, (whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form), to the following:

(a) The Company shall give notice of any contemplated change in corporate form to the Office for review and prior approval before the change can be consummated. The Company shall provide notice to the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Office shall notify the Company prior to such transaction (or series of transactions) if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement.

(b) The Company shall not sell to any family member of the current President of the Company (Wallace Scroggins).

(c) The Company shall not sell to current Company employees Larry and Nadine Fattig.

(d) The purchaser or successor in interest must also agree in writing that the Office's ability to breach under this Agreement is applicable in full force to that entity, unless the Office agrees to waive its enforcement right under the Agreement prior to such sale.

(e) The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void.

(f) If, at any time during the Term, the Company engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Office may deem it a breach of this Agreement pursuant to paragraphs 18-22 of this Agreement.

(g) Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Office.

### Public Statements by Company

24.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in paragraphs 18-22 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the attached Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office.  If the Office determines that a public statement by

any such person contradicts in whole or in part a statement contained in the attached Statement of Facts, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the attached Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts.  This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

25.     The Company agrees that if it or any of its direct or indirect subsidiaries or affiliates, issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Office to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

26.     The Office agrees to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to such

authorities, the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

27.     This Agreement is binding on the Company and the Office, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

## Notice

28.     Any notice to the Office under this Agreement shall be given by email, personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

U.S. Attorney's Office for the Western District of Wisconsin
Attention: AUSA David Reinhard
220 West Washington Avenue, Suite 700
Madison, WI 53703
Email: david.reinhard@usdoj.gov
Phone: 608-250-5498

29.     Any notice to the Company under this Agreement shall be given by email, personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Steve Hurley
Hurley Burish, S.C.
33 East Main Street, Suite 400

Madison, WI 53701
Email: shurley@hurleyburish.com
Phone: 608-257-0945

## **Scope of Resolution**

30.     The United States agrees that this Agreement will completely resolve all possible federal criminal violations against employees of the company that have occurred in the Western District of Wisconsin provided that two conditions are met: (a) Brazos complies with the terms of this Deferred Prosecution Agreement; and (b) the criminal conduct was known to the United States as of the date of this Agreement. This decision not to prosecute is limited to those types of cases for which the United States Attorney's Office for the Western District of Wisconsin has exclusive decision-making authority.

## **Complete Agreement**

31.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company, and a duly authorized representative of the Company.

**AGREED:**

**FOR BRAZOS URETHANE, INC.:**

Date: 11/1/2023                    By: _____
                                       Wallace Scroggins
                                       President
                                       Brazos Urethane, Inc.

Date: 11.08.23                     By: _____
                                       Steve Hurley
                                       Hurley Burish, S.C.
                                       Counsel for Brazos Urethane, Inc.

**FOR THE U.S. ATTORNEY'S OFFICE:**

                                       TIMOTHY M. O'SHEA
                                       United States Attorney
                                       Western District of Wisconsin

Date: 2-7-24                       By: _____
                                       DANIEL J. GRABER
                                       Assistant United States Attorney

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Brazos Urethane, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the President for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 11/1/2023

Brazos Urethane, Inc.

By: _____
Wallace Scroggins
President

## CERTIFICATE OF COUNSEL

I am counsel for Brazos Urethane, Inc. (the "Company") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company President.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  I have fully advised the President and the Board of Directors of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 11. 68, 23

By: _____
Steve Hurley
Hurley Burish, S.C.
Counsel for Brazos Urethane, Inc.